IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LINDA HAWKINS, | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION NO. 14-00371-B |
| | * | |
| vs. | * | |
| | * | |
| CAROLYN W. COLVIN, | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

ORDER

Plaintiff Linda Hawkins (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq*., and 1381, *et seq*.  On May 14, 2015, the parties waived oral argument and consented to have the undersigned conduct any and all proceedings in this case. (Docs. 16, 17).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

I.   **Procedural History**

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on June 21, 2011. (Tr. 142, 146). Plaintiff alleges that she has been disabled since May 1, 2010, due to gout, leg problems, and high blood pressure. (Id. at 179, 183). Plaintiff's applications were denied, and upon timely request, she was granted an administrative hearing before Administrative Law Judge Ricky V. South (hereinafter "ALJ") on October 30, 2012. (Id. at 25). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Id. at 29). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 60). On January 8, 2013, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 21). The Appeals Council denied Plaintiff's request for review on July 3, 2014. (Id. at 1). Thus, the ALJ's decision dated January 8, 2013 became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II.  **Issues on Appeal**

    A.  **Whether the ALJ erred in rejecting the opinion of consultative examiner, Dr. Judy C. Travis, M.D.?**

    B.  **Whether the ALJ erred in failing to consider obesity as a factor of disability?**

III. **Factual Background**

Plaintiff was born on June 1, 1963, and was forty-nine years of age at the time of her administrative hearing on October 30, 2012. (Tr. 25, 179). Plaintiff testified that she completed the twelfth grade in high school and studied physical therapy at a junior college for two years. (Id. at 48).

Plaintiff testified that she last worked in May 2010 as a cook at a restaurant and that she stopped working after she slipped and fell. (Id. at 50-51). According to Plaintiff, her number one problem is her hips, and as a result of her arthritis, she is not able to stand for long periods of time. (Id. at 38, 51). Plaintiff estimated that she is unable to lift more than a gallon of milk, cannot stand for more than thirty minutes, cannot walk and sit more than twenty minutes, and cannot bend, squat, kneel, balance, or climb. (Id. at 52-55). Cold temperature and wetness bother her as well. (Id. at 56). Plaintiff has a walker, but she did not bring it to her administrative hearing. (Id. at 59-60).

IV.  **Analysis**

A.  **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[1]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4

---

[1] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

(S.D. Ala. June 14, 1999).

  **B.   Discussion**

  An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[2] 20 C.F.R.

_____

[2] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 1, 2010, her alleged onset date, and that she has the severe impairments of spine disorder and arthritis.  The ALJ further found that her impairments of obesity, hypertension, allergic rhinitis, and poor vision are non-severe.  (Tr. 14-15).  In addition, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform light work, with the following exceptions: Plaintiff is able to bend, balance, stoop, kneel, crouch, and crawl only occasionally; she is unable to climb ladders, ropes, or scaffolds; she must avoid concentrated exposure to extreme cold, heat, wetness, humidity, fumes, odors, dust, and gases; she must avoid all exposure to unprotected heights, dangerous machinery, and uneven surfaces;

---

claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

and she is restricted to unskilled work in a low stress environment, meaning only simple work-related decisions with few workplace changes.  (Id. at 16).  The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent described.  (Id. at 17).

Given Plaintiff's RFC, the ALJ found that Plaintiff is unable to perform her past relevant work.  (Id. at 20).  However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of light work, as well as her age, education and work experience, there are other jobs existing in the national economy that Plaintiff is able to perform, such as "production assembler," "electronics worker," and "hand presser," all light and unskilled.  (Id. at 20).  Thus, the ALJ concluded that Plaintiff is not disabled.  (Id. at 21).

In assessing the severity of Plaintiff's impairments, the ALJ made the following relevant findings:

> **3. The claimant has the following severe impairments: disorder of the spine and arthritis (20 CFR 404.1520(c) and 416.920(c)).**
>
> The claimant's impairments of a disorder of the spine and arthritis are severe because

they are more than slight abnormalities that have more than a minimal effect on the claimant's ability to perform basic work activities.

The evidence of record shows that the claimant complained of lower back pain and hip pain (Exhibits 2F and 4F). On September 14, 2011, consultative examiner Judy Cooke Travis, M.D. noted that radiographic imaging of the claimant's lumbar spine and pelvis showed moderate anterior spurring in the lumbar spine and severe degenerative arthritis in both hips with minimal joint space and some erosion of the acetabulum (Exhibit 2F). Dr. Travis gave diagnoses of severe degenerative arthritis of both hips and moderate degenerative arthritis of the lumbar spine (Exhibit 2F). The evidence of record shows that the claimant's degenerative arthritis was treated conservatively with medication, such as Naproxen, a nonsteroidal anti-inflammatory drug (NSAID), Ultracet and Tramadol, non-narcotic pain medications, and Lortab, a narcotic pain medication (Exhibits 3F and 4F).

As for obesity, hypertension, allergic rhinitis, and poor vision, I find that these are nonsevere impairments because the medical and other evidence establishes only slight abnormalities or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work activities.

The claimant testified that she weighed 270 pounds at the time of her hearing, but her normal weight is around 165 pounds, as noted on her identification card. The claimant testified that her weight gain is from lying in bed most of the time. I considered obesity in accordance with Social Security Ruling 02-lp. However, the evidence of record shows obesity as long ago as March 7, 2006, about four years prior to the

8

claimant's alleged onset date of disability
(Exhibit 1F).  Treatment notes of Holifield
Clinic, dated March 7, 2006, show that the
claimant weighed 222 pounds, but was in no
respiratory distress, despite complaints of
cough, congestion, fever, and chills and
mild rhonchi on physical examination, and
had no extremity abnormalities or edema
(Exhibit 1F).  Furthermore, the evidence of
record shows that the claimant was able to
perform work activity, despite obesity
(Exhibits 4D and 3E). . . .

(Id. at 14-16).

In addition, in assessing Plaintiff's RFC, the ALJ made the

following relevant findings:

**5.  After careful consideration of the
entire record, I find that the claimant has
the residual functional capacity to perform
light work as defined in 20 CFR 404.1567(b)
and 416.967(b) except the claimant is able
to bend, balance, stoop, kneel, crouch, and
crawl occasionally.  The claimant is unable
to climb ladders, ropes, or scaffolds.  The
claimant must avoid concentrated exposure to
extreme cold, heat, wetness, humidity,
fumes, odors, dust, and gases.  The claimant
must avoid all exposure to unprotected
heights, dangerous machinery, and uneven
surfaces.  The claimant is restricted to
unskilled work in a low stress environment,
meaning only simple work related decisions
with few workplace changes. . . .**

The claimant, a mother of seven who
reportedly lives with three of her children,
ages seven, 13, and 17, testified that her
worst problem is arthritis, including
problems with her hips.  The claimant
alleges that she can hardly stand up.  The
claimant testified that she uses Goody P.M.
or Ibuprofen when she cannot afford
medicine.  The claimant testified that she
has pain all through the day and night that

might calm down, but never goes away. The
claimant testified that her pain is at a
level of eight on a scale of one to 10 with
medication and at a level of about seven
with medication. The claimant testified
that she could lift or carry a gallon of
milk, stand for about 20 to 30 minutes, walk
for 20 minutes or so, and sit for about 20
minutes and needs to take several breaks
during the day. The claimant testified that
she is unable to kneel, squat, or climb
ladders, ropes, or scaffolds. The claimant
testified that she does not wash dishes, do
laundry, vacuum, make beds, or take out
garbage. The claimant testified that her
sons cook and shop for her, her 19 and 20-
year-old children are around, and her
friends come around and help her. The
claimant testified that she gets up at 2:00
a.m. or 3:00 a.m., sees her seven-year-old
and 13-year-old children off for school,
lies back down, gets up around noon, lies
back down in bed until 3:00 p.m., when her
children get out of school, and tries to
make sure everything is out to cook. The
claimant testified that she eats supper at
about 5:00 p.m., helps her seven-year-old
child with homework, goes to bed at 8:00
p.m., and tosses and turns at night.

After careful consideration of the evidence,
I finds that the claimant's medically
determinable impairment could reasonably be
expected to cause the alleged symptoms;
however, the claimant's statements
concerning the intensity, persistence and
limiting effects of these symptoms are not
credible to the extent they are inconsistent
with the above residual functional capacity
assessment. . . .

Despite the claimant's allegations of
disabling symptoms, the evidence of record
shows rather infrequent treatment, as well
as some significant gaps in treatment. The
claimant testified that she worked at a
hunting camp a couple of years prior to her

10

hearing, where she cleaned doves for people
that hunted and cooked and cleaned for them.
The claimant testified that she could not
work there any longer because she was aching
so badly.  However, the evidence of record
contains one treatment note prior to the
claimant's alleged onset date of disability
of May 1, 2010 (Exhibit 1F).  This treatment
note, from Holifield Clinic, is dated March
7, 2006, more than four years prior to the
claimant's alleged onset date of disability,
and shows complaints of cough, congestion,
fever, and chills (Exhibit 1F).

The next treatment note of record, which is
also from Holifield Clinic, is dated August
23, 2011, more than a year after the
claimant's alleged onset date of disability
(Exhibit 3F).  This treatment note shows
that the claimant was seen by Gerald M.
Hodge, M.D. for a pap and breast
examination, requested refills on Lortab,
Metoprolol, and Na[pr]oxen, reported that
she was seeing Dr. Travis the following week
for leg pain, and was trying to get on
disability (Exhibit 3F).  Dr. Hodge noted
physical examination findings of lumbar
spine tenderness and spasm with radiation to
the right leg, but no abnormal lumbar spine
curvatures, normal tone, and normal
ambulation (Exhibit 3F).

The remaining three treatment notes of
record are from Whatley Health Services,
Inc. and are dated November 17, 2011,
February 9, 2012, and August 2, 2012
(Exhibit 4F).  These records show that the
claimant was given an assessment of
degenerative joint disease, was prescribed
Ultracet or Tramadol, and reported feeling
better with Tramadol (Exhibit 4F).  With the
exception of vital findings, physical
examination findings were noted only on
February 9, 2012 (Exhibit 4F).  These
physical examination findings included full
range of motion of the claimant's joints,
within normal examination of the claimant's

11

back, no motor deficit, and a normal gait
(Exhibit 4F). On August 2, 2012, the
claimant complained of lower back pain for
four months (Exhibit 4F). However, no
physical examination findings related to the
claimant's back are noted (Exhibit 4F).

On September 14, 2011, consultative examiner
Dr. Travis evaluated the claimant, diagnosed
the claimant with severe degenerative
arthritis of both hips and moderate
degenerative arthritis of the lumbar spine,
and opined that the claimant cannot stand or
walk for more than 15 minutes at a time, and
for less than two hours in an eight-hour
shift, cannot climb, squat, or kneel but
rarely, and would be absent more than four
to five days a month due to pain (Exhibit
2F). However, Dr. Travis noted that the
claimant admitted that the walker that she
presented with was "borrowed from a
friend," and was not prescribed (Exhibit
2F). Dr. Travis noted that the claimant had
dorsolumbar spine range of motion of 80
degrees of flexion, 15 degrees of extension,
20 degrees of right and left lateral
flexion, and 20 degrees of right and left
lateral rotation, hip range of motion of 20
degrees of right and left abduction and
internal rotation, 10 degrees of right and
left adduction and extension, 30 degrees of
right and left external rotation, and 80
degrees of right flexion and 85 degrees of
left flexion, moderate muscle spasms in the
lumbar spine, poor heel or toe walking, and
painful and difficult squatting with
assistance (Exhibit 2F). However, Travis
also noted that the claimant had no hospital
visits or admissions due to complaints
relative to her disability applications,
normal appearance of her lower extremities
with grade two reflexes and no muscle
atrophy, normal cervical and thoracic spine
range of motion, tentative but unassisted
gait with a borrowed walker, no ataxia or
spasticity, fair tandem walk, normal
sensation to sharp, light touch, vibration,

and proprioception, five out of five motor
strength in all extremities, and negative
Romberg testing (Exhibit 2F). Dr. Travis
noted that anterior view included the
claimant's pelvis and showed very severe
arthritis of both hips, "which explains all
the pain," but also noted that radiographic
imaging showed lumbar arthritis, "but not
enough to explain her complaints" (Exhibit
2F).

Furthermore, in her Disability Report-Adult,
the claimant reported that she stopped
working on May 1, 2011, "[b]ecause of other
reasons." The claimant reported, "I got
fired" (Exhibit 2E).

As for the opinion evidence, . . . I give
little weight to the opinion of consultative
examiner Dr. Travis, discussed herein
(Exhibit 2F). I find that the totality of
the evidence, such as Dr. Hodge's August 23,
2011 treatment notes showing normal tone and
normal ambulation, despite lumbar spine
tenderness and spasm with radiation to the
claimant's right leg, February 9, 2012
treatment notes of Whatley Health Services
showing that the claimant reported feeling
better with Tramadol and had a normal gait,
no motor deficit, within normal back
examination, and full joint range of motion,
and Dr. Travis's own physical examination
findings of no muscle atrophy of the
claimant's lower extremities, normal
sensation, and five out of five strength in
all extremities, does not support the degree
of limitations opined by Dr. Travis
(Exhibits 2F, 3F, and 4F).

In sum, the above residual functional
capacity assessment is supported by the
claimant's credible symptoms of pain, the
claimant's testimony that cold bothers her
and she can tell when it is going to rain,
and the medical evidence of record,
including radiographic imaging of the
claimant's hips and lumbar spine, discussed

herein, Dr. Hodge's August 23, 2011
treatment notes showing normal tone and
normal ambulation, despite lumbar spine
tenderness and spasm with radiation to the
claimant's right leg, the February 9, 2012
treatment notes of Whatley Health Services
showing that the claimant reported feeling
better with Tramadol and had a normal gait,
no motor deficit, within normal back
examination, and full joint range of motion,
and consultative examiner Dr. Travis's
physical examination finding of no muscle
atrophy of the claimant's lower extremities.
In addition, I considered the claimant's
credible symptoms of pain and prescribed
medication for pain in restricting her to
unskilled work in a low stress environment,
meaning only simple work related decisions
with few workplace changes.

(Id. at 16-19).   The Court now considers the foregoing in light

of the record in this case and the issue on appeal.

> 1.  **Issues**

> **A. Whether the ALJ erred in evaluating**
> **the opinions of consultative examiner,**
> **Dr. Judy C. Travis, M.D.?**

Plaintiff argues that the ALJ erred in rejecting the

opinions of consultative examiner, Dr. Judy C. Travis, M.D.,

regarding the severity of her arthritis.   (Doc. 11 at 3).

Specifically, Plaintiff argues that the ALJ erred in rejecting

Dr. Travis's opinions that Plaintiff has significant functional

limitations due to severe arthritis in her hips that would cause

her to miss work approximately four to five days a week and

would essentially preclude her from working.   (Id.).   The

Commissioner counters that the ALJ properly discredited Dr.

14

Travis' opinions given their inconsistency with the medical evidence of record, including some of Dr. Travis' own examination findings.  (Doc. 4 at 8).  Having reviewed the record at length, the Court finds that Plaintiff's claims are without merit.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations.  See 20 C.F.R. § 404.1545.  Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence.  See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012).  Once the ALJ has determined the Plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence.  See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985).  Plaintiff has failed to meet her burden in this case.

As previously stated, the ALJ concluded that, although Plaintiff has the severe impairments of disorder of the spine and arthritis, she is not disabled. (Tr. 14).  The ALJ further

15

concluded that Plaintiff's obesity, hypertension, allergic rhinitis, and poor vision are non-severe.[3]  (Id. at 15).  In making these determinations, the ALJ relied upon Plaintiff's medical records from her treating physicians, Dr. Gerald M. Hodge, M.D., and Dr. Gerald Sibanda, M.D., and the Plaintiff's testimony.  (Id. at 18).  To support her claim on appeal that her arthritis is disabling, Plaintiff argues that the ALJ erred in discrediting the opinions of consultative examiner Dr. Judy Travis, M.D., that she cannot stand or walk more than fifteen minutes at a time and more than two hours total in an eight-hour work day and that she would be absent from work four to five days a month because of pain.[4]  (Doc. 11 at 5; Tr. 230).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an important part of steps four and five of the disability determination process.  In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so.  See Winschel v.

---

[3] Plaintiff does not challenge the ALJ's findings related to her hypertension, poor vision, and allergic rhinitis.  Rather, Plaintiff's appeal focuses on the ALJ's findings with respect to her arthritis and obesity as it affects her arthritis.  (Doc. 11 at 7-8).  Therefore, the Court's discussion is limited to those impairments.

[4] The ALJ gave Dr. Travis' opinions "little weight," finding that the "totality of the evidence" (to include the medical records of Plaintiff's treating physicians, Dr. Hodge and Dr. Sibanda) did "not support the degree of limitations opined by Dr. Travis."  (Tr. 19).

Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). The opinion of "a one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician, Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160), and an ALJ must have good cause to credit an examining consulting physician's opinion over that of a treating physician. See Adamo v. Commissioner of Soc. Sec., 365 F. Appx. 209, 213 (11th Cir. 2010). Furthermore, absent good cause, the opinion of a non-examining physician is entitled to little weight if it is contrary to either the treating or examining physician's findings. See Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Broughton v. Heckler, 776 F.2d at 962.

The foregoing notwithstanding, good cause exists to

17

discredit the testimony of any medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician [treating, examining, or non-examining] when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo, 365 Fed. Appx. at 212 (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

The record shows that Dr. Travis performed a consultative examination at the request of the Agency on September 14, 2011. (Id. at 229). On that date, Plaintiff's chief complaint was hypertension and "low back pain radiating down both legs." (Id.). Dr. Travis' examination findings reflect that although Plaintiff is obese, her upper extremities appeared normal, with normal reflexes and normal range of motion and no muscular atrophy, that her grip was five out of five bilaterally, and that she had normal dexterity in both hands. (Id. at 230). Plaintiff's lower extremities likewise had normal appearance, with no muscle atrophy and normal reflexes, although Plaintiff

18

did have decreased range of motion in her hips. (Id.). Plaintiff's back and spine had normal curvature, and normal range of motion in the cervical and thoracic spine, although she did have moderate muscle spasms in the lumbar spine. (Id.). Plaintiff's gait was tentative but unassisted, with no ataxia or spasticity. (Id.). Plaintiff's squat was painful, and her heel toe walk was poor, although her tandem walk was fair. (Id.). Plaintiff's neurological examination was completely normal, with five out of five motor strength in all extremities and a negative Romberg. (Id.). Dr. Travis also noted that Plaintiff had no hospital visits or admissions related to the medical conditions for which she sought disability. (Id. at 229). X-rays of Plaintiff's lumbar spine showed moderate degenerative arthritis. (Id. at 230). X-rays of Plaintiff's hips showed severe degenerative arthritis of both hips. (Id.). Based on her examination and x-rays, Dr. Travis opined that the arthritis in Plaintiff's lumbar spine was not severe enough to explain her complaints, but that the arthritis in her hips was severe enough to explain her pain and that Plaintiff could not stand or walk for more than fifteen minutes at a time and for less than a two hours in an eight-hour work day. (Id.). Dr. Travis further opined that Plaintiff would miss four to five days a month because of her hip pain. (Id.). As the ALJ found, these

opinions are inconsistent with the medical evidence from Plaintiff's treating physicians in this case.

The record shows that, on August 23, 2011, three weeks prior to Plaintiff's consultative examination with Dr. Travis, Plaintiff visited her treating physician, Dr. Gerald M. Hodge, M.D., at the Holifield Clinic for a gynecological examination. (Id. at 235). This visit was more than one year after Plaintiff's alleged onset date of May 1, 2010, and appears to be the first time that Plaintiff sought medical treatment for any condition following her alleged onset date. At the August 23, 2011 appointment with Dr. Hodge, Plaintiff reported that she was "trying to get on disability" and would be seeing consultative examiner, Dr. Travis, the following week for her leg pain. (Id. at 235). Plaintiff reported that she was experiencing muscle pain and requested refills of her high blood pressure and pain medications. (Id.). Dr. Hodge examined Plaintiff and noted some lumbar spine tenderness and spasm, with radiation to right leg, but no abnormal curvatures, no swelling in the extremities, normal neurologic tone, and normal ambulation/gait. (Id. at 236).

Three months later, on November 17, 2011, Plaintiff saw Dr. Gerald Sibanda, M.D., at Whatley Health Services for a check up, at which time Dr. Sibanda diagnosed Plaintiff with degenerative joint disease and hypertension and refilled Plaintiff's pain and

high blood pressure medications. (Id. at 243). Plaintiff returned to Dr. Sibanda three months later, on February 9, 2012, and reported that she was experiencing low back pain but "feeling better with Tramadol." (Id. at 242). A physical examination at that time revealed normal back, normal joints with full range of motion, normal gait, no motor deficits, and no swelling in her extremities. (Id.). Dr. Sibanda refilled Plaintiff's medications and instructed her to return in three months. (Id.). Plaintiff's final treatment note is dated August 2, 2012, on which date she reported to Dr. Sibanda that she was experiencing low back pain, numbness in her left hand, nausea, dizziness, wheezing, and itching. (Id. at 241). Dr. Sibanda again diagnosed Plaintiff with degenerative joint disorder and hypertension, refilled her prescriptions, and ordered her to return in four months. (Id. at 241). This is the final treatment note.

While there is no question in this case that Plaintiff suffers from severe arthritis in her hips, her treatment records reflect very conservative treatment with pain medication, no recommendations of physical therapy or surgery, and no hospitalization admissions or visits related to this medical condition. Moreover, none of Plaintiff's treating physicians has ever indicated that her arthritis, or any of her medical conditions, is disabling in nature. To the contrary, as

21

discussed above, Dr. Sibanda noted upon examination on February 9, 2012, that Plaintiff had normal joints with full range of motion, normal gait, no motor deficits, no swelling of her extremities, and that his examination of her back was within the normal range. (Id. at 242). As the ALJ found, Plaintiff's treatment records reflect significant normal findings from both of her treating physicians relative to her back, her upper extremities, and her lower extremities (id. at 236, 242), which findings are inconsistent with the severity of limitations found by Dr. Travis. In fact, Dr. Travis' opinions are inconsistent with her own examination findings that Plaintiff had no abnormal curvatures of the back, no swelling in her extremities, normal neurologic tone, and normal ambulation and gait. (Id. at 236).

Given the inconsistencies between Dr. Travis' opinions and the contemporaneous treatment records from Plaintiff's treating physicians, Drs. Hodge and Sibanda, as well as the inconsistences within Dr. Travis' own findings, the ALJ had good cause to discredit the extreme limitations offered by Dr. Travis. Moreover, having reviewed the record at length, the Court finds that the substantial medical evidence in this case, particularly the medical evidence from Plaintiff's treating physicians Dr. Hodge and Dr. Sibanda, supports the ALJ's finding that Plaintiff can perform a range of light work, with the

restrictions set forth by the ALJ.  Therefore, Plaintiff's claim is without merit.

**B.   Whether  the  ALJ  erred  in  failing  to consider  obesity  as  a  factor  of disability?**

Plaintiff  next  argues  that  the  ALJ  erred  in  failing  to consider  obesity  as  a  factor  in  her  disability  determination. (Doc.  11  at  6).   Specifically,  Plaintiff  argues  that  the  ALJ erred  in  finding  that  her  obesity  was  non-severe  and  in  failing to  discuss  obesity  in  relation  to  her  RFC  assessment.   (Id. at 6-8).   The  Commissioner  argues  that  the  ALJ  did  address Plaintiff's  obesity  in  his  decision,  found  it  to  be  non-severe, and  found  that  none  of  Plaintiff's  impairments,  alone  or  in combination,  rendered  her  disabled.   (Doc.  14  at  9-10).   The Commissioner  further  argues  that  any  alleged  error  is  harmless because  the  ALJ  expressly  considered  Plaintiff's  obesity pursuant  to  SSR  02-1p  at  step  two  of  the  evaluation  process,  and he  accounted  for  her  obesity  in  his  RFC  when  he  restricted  her to  light  work,  with  only  occasional  postural  activities,  no climbing  of  ladders,  ropes,  or  scaffolds,  and  no  exposure  to extreme  heat  or  hazards.   (Id.; Tr.  16).   The  Court  finds  that Plaintiff's  claim  is  without  merit.

Social  Security  Ruling  02-1p  guides  courts  in  evaluating disability  claims  brought  by  a  claimant  with  obesity,  providing that  an  ALJ  will  consider  a  claimant's  obesity  at  every  step  of

the sequential evaluation process.   See SSR 02-1p, 2002 SSR LEXIS 1, 2002 WL 34686281.  The Ruling states that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately" and directs the ALJ to "find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individuals physical or mental ability to do basic work activities."  Id.   "There is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment," nor do "descriptive terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity) establish whether obesity is or is not a 'severe' impairment for disability program purposes."  Id.  Rather, the Agency "will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe."  Id.  The Ruling recognizes that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone."  Id.  In such cases, "[a]n assessment should . . . be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."  Id.

   In this case, the record shows that the ALJ performed an

24

individualized assessment of the effect of Plaintiff's obesity on her ability to perform routine movement and necessary physical activities within the work environment.[5]  At step two of the sequential evaluation process, the ALJ stated:

> As for obesity, . . . I find that [this is a] nonsevere impairment[] because the medical and other evidence establishes only slight abnormalities or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work activities.
>
> The claimant testified that she weighed 270 pounds at the time of her hearing, but her normal weight is around 165 pounds, as noted on her identification card.  The claimant testified that her weight gain is from lying in bed most of the time.  *I considered obesity in accordance with Social Security Ruling 02-1p.*  However, the evidence of record shows obesity as long ago as March 7, 2006, about four years prior to the claimant's alleged onset date of disability (Exhibit 1F).  Treatment notes of Holifield Clinic, dated March 7, 2006, show that the claimant weighed 222 pounds, but was in no respiratory distress, despite complaints of cough, congestion, fever, and chills and mild rhonchi on physical examination, *and had no extremity abnormalities or edema* (Exhibit 1F).  *Furthermore, the evidence of record shows that the claimant was able to perform work activity, despite obesity* (Exhibits 4D and 3E). . . .

---

[5] Using Dr. Travis' height and weight measurements (height 5'7" and weight 255 lbs.), Plaintiff's BMI is 39.9, which is considered obese.  See http://www.nhlbi.nih.gov/health/educatio nal/lose_wt/BMI/bmicalc.htm.  A BMI of 40 or greater is considered extremely obese.  See http://www.nhlbi.nih.gov/health /educational/lose_wt/BMI/bmi_dis.htm.

(Id. at 14-16) (emphasis added).

Thus, the ALJ clearly evaluated Plaintiff's obesity at step two of the analysis, discussing SSR 02-1p in light of the normal examination findings of Plaintiff's treating physician, and the fact that Plaintiff had performed work activity for years with obesity.  (Id. 15).  Also, in his RFC assessment (and at step two), the ALJ found it compelling that, after her alleged onset date, both of her treating physicians found no swelling in her extremities, "normal ambulation," "normal gait," "normal tone" "full joint range of motion," "no motor deficit," and normal back examination, despite her weight.  (Id. at 15, 18-19, 236, 242).  Although the ALJ did not reiterate his findings regarding Plaintiff's obesity, he made it clear that he had "considered all [of Plaintiff's] symptoms," as well as the "totality of the evidence." (Id. at 19).

Having reviewed the evidence at length, the Court concludes that the ALJ's findings, including his specific reference to SSR 02-1p, sufficiently demonstrate that he properly considered Plaintiff's obesity and its effect on her other impairments at all steps of the evaluation process.  It is the Plaintiff who bears the burden of proving her disability in this case.  See 20 C.F.R. 404.1512 ("In general, you have to prove to us that you are . . . disabled.).  Despite Plaintiff's argument that the ALJ erred in finding her obesity non-severe and in failing to

expressly discuss her obesity in his RFC assessment, Plaintiff
has failed to show that her obesity has in fact caused
limitations to her exertional and postural functions in excess
of her RFC.   Indeed, the substantial evidence shows the
contrary.   Cf. Bailey v. Colvin, 2014 U.S. Dist. LEXIS 152816,
*12, 2014 WL 5488401, *5 (N.D. Ala. Oct. 29, 2014) (finding that
the ALJ did not err in failing to discuss claimant's obesity in
his RFC assessment where he evaluated the claimant's obesity in
light of SSR 02-1p and found it to be a non-severe, and the
claimant failed show that his obesity had caused limitations to
his exertional and postural functions that would preclude work
at the light exertional level).   Thus, Plaintiff's claim is
without merit.[6]

V.   **Conclusion**

---

[6] Even if the Court were to assume error in the ALJ's finding
that Plaintiff's obesity was non-severe and in failing to
discuss Plaintiff's obesity in connection with the RFC
assessment, the Court finds that those errors are harmless.
Harmless errors are those that do not prejudice the plaintiff
and would not change the disability determination.  Battle v.
Astrue, 243 Fed. Appx. 514, 522 (11th Cir. 2007) (unpublished)
(citing Diorio v. Heckler, 721 F. 2d 726, 728 (11th Cir. 1983));
see also Ware v. Schweiker, 651 F. 2d 408, 412 (5th Cir. 1981)
(remand would be a "wasteful corrective exercise" when "no
further findings could be made that would alter the ALJ's
determination" given the record as a whole).   In this case,
Plaintiff has failed to show that her obesity has caused
limitations to her exertional and postural functions that would
preclude her from performing light work with the restrictions
set by the ALJ.   To the contrary, the substantial evidence
supports the ALJ's decision that she can perform such work.
Thus, any such alleged errors are harmless.

27

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **23rd** day of **September, 2015.**

                                  /s/ SONJA F. BIVINS
                        **UNITED STATES MAGISTRATE JUDGE**